Date Signed:
June 19, 2017



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | Case No. 11-00853 |
|---|---|
| MICHAEL DYLAN HENSHAW and KIMBERLY HENSHAW, | Chapter 7 |
| Debtors. | |
| DANE FIELD, Trustee, | Adv. Pro. No. 12-90070 |
| Plaintiff, | Dkt. No. 101 |
| vs. | |
| PHILIP DANIEL HENSHAW and BARBARA WRESSEL HENSHAW, | |
| Defendants. | |

### MEMORANDUM OF DECISION
### ON MOTION FOR SUMMARY JUDGMENT

This adversary proceeding presents the question whether the defendants can seek reformation of a deed in the face of the trustee's rights as a bona fide purchaser of real estate.

I.  Background

Most of the historical facts are undisputed, with one important exception.

The defendants in this adversary proceeding, Philip and Barbara Henshaw, are the parents of Michael Dylan Henshaw, one of the debtors. In 2007, Mr. and Mrs. Henshaw and the debtors acquired property in Kailua-Kona.[1] The deed stated that they took title as joint tenants.[2]

In 2010, the debtors quitclaimed their interest in the property to Mr. and Mrs. Henshaw.[3] In 2011, the debtors filed a chapter 7 petition.

The only disputed issue has to do with whether the 2007 deed accurately reflected the parties' intentions concerning their ownership shares. The 2007 deed specified that the parties took title as joint tenants; as a matter of law, this meant that their ownership shares were equal.[4] But Mr. and Mrs. Henshaw claim that they paid virtually all of the purchase price for the property and most of the debt service and that they intended that their share of ownership would be in proportion to their contributions.

---

[1] *Dane Field v. Philip and Barbara Henshaw (In re Henshaw)*, Case No. 11-00853, Adv. No. 12-90070, Dkt. 102 at 16-48 (Bankr. D. Hawaii 2011).

[2] *Id.*

[3] *Id.*

[4] *In re Henshaw*, 485 B. R. 412, 417 (D. Hawaii 2013), *affirmed*, 670 F. App'x 563 9th Cir. 2016).

U.S. Bankruptcy Court - Hawaii   #12-90070   Dkt # 113   Filed  06/19/17   Page 2 of 13

In December 2011, the bankruptcy trustee commenced an adversary proceeding (Adv. No. 11-90105, the "first adversary proceeding") seeking to avoid the 2010 quitclaim deed as a fraudulent transfer. I granted the trustee's motion for summary judgment in the first adversary proceeding, holding that: (1) the 2007 deed unambiguously stated that the debtors held a joint tenancy interest in the property; (2) the parol evidence rule bars the admission of extrinsic evidence to vary or contradict the deed's plain terms; (3) as joint tenants, the debtors necessarily owned a half interest in the property; and (4) any value the debtors received in exchange for the transfer was not reasonably equivalent to the value of a half interest in the property.[5] The district court and the Ninth Circuit Court of Appeals affirmed my order on appeal.[6]

In the meantime, the trustee commenced this adversary proceeding to sell the debtors' interest in the property together with Mr. and Mrs. Henshaw's interest, pursuant to section 363(h) of the Bankruptcy Code. The Henshaws filed a counterclaim seeking reformation of the 2007 deed to reflect what they say was their true intention (i.e., that they and the debtors would own the property in proportion to their contributions, and not in equal shares).[7]

---

[5] *Dane Field v. Philip and Barbara Henshaw (In re Henshaw)*, Case No. 11-00853, Adv. No. 11-90105, Dkt. 26 (Bankr. D. Hawaii 2011).

[6] *Id.* at dkt. 48, 51.

[7] *Field v. Henshaw, et al.*, Adv. No. 12-90070, Dkt. 9.

3

I dismissed the Henshaws' counterclaim based on the doctrine of issue preclusion. I held that the judgment in the first adversary proceeding decided all issues which the counterclaim presented.[8] The district court affirmed, but the court of appeals reversed and remanded, holding (in summary) that the issues presented in the trustee's avoidance complaint were not identical to the issues presented in the Henshaws' reformation counterclaim.[9]

The trustee has now filed a motion for summary judgment based on the grounds that (1) the counterclaim fails as a matter of law because a deed cannot be reformed against a trustee who takes the position of a bona fide purchaser for value, and (2) the counterclaim is an impermissible collateral attack on the prior avoidance order in the first adversary proceeding.[10]

## II. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] In resolving a summary judgment motion, the court views the evidence in the

---

[8] *Field v. Henshaw, et al. (In re Henshaw)*, No. 11-00853, 2013 WL 1005117 (Bankr. D. Haw. Mar. 13, 2013), *aff'd*, Adv. No. 12-90070, 2014 WL 185782 (D. Haw. Jan. 13, 2014), *rev'd*, 670 F. App'x 594 (9th Cir. 2016).

[9] *Id.*

[10] *Field v. Henshaw, et al.*, Adv. No. 12-90070, Dkt. 9.

[11] Fed. R. Civ. P. 56(c), made applicable by Fed. R. Bankr. P. 7056.

4

U.S. Bankruptcy Court - Hawaii   #12-90070  Dkt # 113   Filed 06/19/17   Page 4 of 13

light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party.[12] The court does not weigh evidence, but rather determines only whether there is a genuine issue for trial.[13] Where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.[14]

III. Discussion

　A. Trustee's Status as a Bona Fide Purchaser For Value

The trustee argues that his rights as a deemed bona fide purchaser of the property preclude reformation of the 2007 deed. The Bankruptcy Code gives the trustee the status and rights of a bona fide purchaser of the estate's real property as of the petition date.[15] While federal law confers upon the trustee the status and rights of a bona fide purchaser, state law creates and defines those rights.[16]

Reformation is appropriate when a written instrument does not, through a mutual mistake of fact, conform to the intention of the parties to the instrument.[17]

---

[12] *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

[14] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[15] 11 U.S.C. § 544(a)(3).

[16] 5 *Collier on Bankruptcy* ¶ 544.06[2], p. 544-24 (16th ed. 2017).

[17] *State v. Kahua Ranch, Ltd.*, 47 Haw. 28, 33 (1963).

5

Although neither party has cited any Hawaii authority on point, I predict that the Hawaii Supreme Court would follow the common law rule that a contract may not be reformed if doing so would unfairly affect the rights of a bona fide purchaser for value.[18] This is consistent with the general rule in Hawaii that a good faith purchaser of real property for value takes the property free of any claims of which the buyer has neither actual nor constructive notice.[19]

Therefore, the trustee holds the property free of reformation claims unless a hypothetical bona fide purchaser would have taken subject to those claims.

A purchaser of real estate is charged with notice of any document in the real estate recording system and any fact which such document would lead a reasonably prudent person to inquire about and discover.[20]

A hypothetical buyer, who looked at the real estate records on the date of the debtors' bankruptcy petition, would have found the 2007 deed and the 2010 quitclaim deed. Neither of these documents would have specifically alerted the buyer that the 2007 deed did not accurately reflect the Henshaws' alleged intentions. The 2010 quitclaim deed would not have alerted the hypothetical buyer that the 2007

---

[18] *See* Restatement (Second) of Contracts § 155; 66 Am. Jur. 2d Reformation of Instruments § 68.

[19] *Kau Agribusiness Co. v. Heirs of Ahulau*, 105 Haw. 182, 193 (2004).

[20] *SGM P'ship v. Nelson*, 5 Haw. App. 526, 529 (Haw. App. 1985).

6

deed was wrong; the buyer could reasonably assume that the parties wished to change their ownership shares, rather than to correct them. The quitclaim deed would not have prompted a reasonably prudent buyer to inquire further into the debtors' ownership interest in the property.

That the conveyance occurred via quitclaim deed rather than by warranty deed would not raise inherent suspicion in a hypothetical buyer. A quitclaim deed indicates that the grantee acquired whatever interest the grantor may have had in the property,[21] but neither warrants nor professes that the title is valid.[22] The fact that the seller of real estate does not wish to give warranties of title does not necessarily mean that the title is defective.

Further, when a deed contains a mistake, the common practice in Hawaii is to record a correction deed. Such a deed makes it clear that the original deed contained an error.[23] In this case, the Henshaws and the debtors did not execute a correction deed.[24]

---

[21] *Kondaur Cap. Corp. v. Matsuyoshi*, 136 Haw. 227, 241 (2015).

[22] QUITCLAIM DEED, Black's Law Dictionary (10th ed. 2014).

[23] *See* Marjorie C. Y. Au, et al., *Hawaii Conveyance Manual* 2-8, 4a-49 (Hawaii State Bar Association, 5th ed. 2010).

[24] The trustee argues that the 2010 quitclaim deed should not give notice of the mistake because this court has already decided that the deed represented a fraudulent transfer. He argues that it would be anomalous and unjust to hold that a transferee of a fraudulent transfer gets any benefit from the very document that effected the fraudulent transfer. I need not reach this argument because I hold that the 2010 quitclaim deed did not confer such notice. Nevertheless, I do not accept the

7

U.S. Bankruptcy Court - Hawaii   #12-90070   Dkt # 113   Filed  06/19/17   Page 7 of 13

A purchaser also "takes his title subject to the claims of parties in possession when he buys."[25] On the petition date, when the rights of the hypothetical bona fide purchaser are measured, the debtors, and not the Henshaws, were living in the property. But this would not have alerted the hypothetical buyer that the 2007 deed contained an error. If anything, it might have suggested that the debtors had a *greater* interest in the property than they actually had at that time (after they gave up their entire interest under the quitclaim deed). In fact, it probably would not have raised any question in the minds of a hypothetical buyer; it would not be the least bit surprising to find the debtors residing in a home owned by the debtor-husband's parents.

Because a hypothetical buyer would not have had sufficient notice of any mistake in the 2007 deed, the counterclaim is not viable, in light of § 544(a) of the Bankruptcy Code. The trustee's bona fide purchaser status cuts off the Henshaws' reformation claim. Therefore, the trustee is entitled to a summary judgment on this ground.

---

trustee's argument. The 2010 quitclaim was a matter of record when the debtors commenced their bankruptcy case; a hypothetical bona fide purchaser of the property on that date would have seen it. The subsequent avoidance of that deed does not negate any notice it imparted before it was avoided.

[25] *Achi v. Kauwa*, 5 Haw. 298, 299 (1885); *see also Yee Hop v Young Sak Cho*, 25 Haw. 505-06 (1920).

U.S. Bankruptcy Court - Hawaii  #12-90070  Dkt # 113  Filed 06/19/17  Page 8 of 13

B.  The Counterclaim is Not an Impermissible Collateral Attack

The trustee's second ground in moving for summary judgment is that the Henshaws' counterclaim is an impermissible collateral attack on the court's prior judgment avoiding the 2010 quitclaim deed. The Henshaws point out that the court of appeals has decided that collateral estoppel does not bar their counterclaim. But the trustee correctly highlights that, under Hawaii law, the doctrines of collateral estoppel and collateral attack are distinct.[26] In other words, the doctrine of collateral attack can bar litigation of issues that the doctrine of collateral estoppel permits.[27]

The application of the doctrine of collateral attack is a question of law.[28] The doctrine has four elements:

> The party asserting that an action constitutes an impermissible collateral attack on a judgment must establish that: (1) a party in the present action seeks to avoid, defeat, evade, or deny the force and effect of the prior final judgment, order, or decree in some manner other than a direct post-judgment motion, writ, or appeal; (2) the present action has an independent purpose and contemplates some other relief or result than the prior adjudication; (3) there was a final judgment on the merits in the prior adjudication; and (4) the party against whom the collateral attack doctrine is raised was a party or is in privity with a party in the

---

[26] *Smallwood v. City and Cty. of Honolulu*, 118 Haw. 139, 150 (Haw. App. 2008); *see also In re Thomas H. Gentry Revocable Trust*, 138 Haw. 158, 169 (2016) (where the Hawaii Supreme Court cited and quoted *Smallwood* with approval).

[27] *Estate of Kam*, 110 Haw. 8, 22 (2006)(citing *Kapiolani Estate v. Atcherly*, 14 Haw. 651, 661 (1903) (stating that a collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law).

[28] *Smallwood*, 118 Haw. at 146.

9

U.S. Bankruptcy Court - Hawaii    #12-90070    Dkt # 113    Filed  06/19/17    Page 9 of 13

prior action. Collateral attacks may be allowed under limited circumstances, such as when there is an allegation that the prior court lacked subject matter jurisdiction or that fraud was committed in the prior proceeding.[29]

The first requirement is not met. The trustee's complaint sought avoidance of the 2010 quitclaim deed; in other words, the trustee sought to restore the status quo that existed before the quitclaim deed became effective. The Henshaws' counterclaim asks the court to reform the 2007 deed; in other words, the Henshaws want the court to determine what was the status quo before the 2010 quitclaim deed. It is true that, if the Henshaws are successful, the trustee's victory on his complaint will be less complete than he hoped, but the collateral attack doctrine is not meant to prevent that kind of disappointment.

In all of the Hawaii cases applying the doctrine of collateral attack, the claim in the subsequent case would have nullified the judgment in the first case. For example, in *First Hawaiian Bank v. Weeks*,[30] the counterclaimants in a quiet title action argued that a probate court order entered over a century earlier had incorrectly interpreted a will. The Supreme Court held that this was an impermissible collateral attack because the counterclaimants sought to "nullify as evidence of title . . . the probate court's

---

[29] *Id.* at 150.

[30] 70 Haw. 392 (1989).

U.S. Bankruptcy Court - Hawaii   #12-90070   Dkt # 113   Filed  06/19/17   Page 10 of 13

order of distribution . . . ."[31]

In *Smallwood*, the plaintiff filed an action related to the removal of a retaining wall as part of a large real estate development project.[32] The trial court dismissed that action. The same plaintiff then filed a second action challenging another aspect of the same project (plans for the discharge of stormwater and runoff). The trial court dismissed that action under the doctrine of collateral attack. The Intermediate Court of Appeals ("ICA") reversed because the two suits challenged two different elements of a real estate project; a judgment in the second suit determining that one element was unlawful would not overturn the judgment in the first case that another element was lawful.

In *Gamino*, a party attempted to challenge a sale by filing a civil court case even though he had stipulated to an order of the family court providing for the sale.[33] This unavoidable inconsistency between his stipulation in the family court case and his argument in the civil court case invoked the collateral attack doctrine.

Lastly, in *Atcherly*, in a suit to enforce a decree requiring a conveyance of land by a certain guardian of three minors, the defendant claimed that she, and not the

---

[31] *Id.* at 399.

[32] 118 Haw. 139 (Haw. App. 2008).

[33] 625 P.2d 1055 (Haw. App. 1981).

U.S. Bankruptcy Court - Hawaii   #12-90070   Dkt # 113   Filed  06/19/17   Page 11 of 13

guardian, held title to land.[34] The defendant contended that the minors were not named parties in the decree and did not receive proper service of it so the decree could not be enforced. The Supreme Court held that the guardian sufficiently represented his minors' interests and that mere errors or irregularities cannot be taken advantage of to establish a collateral attack, so the defendant's attack on the title of the land did not nullify the original decree.

The Henshaws' counterclaim, if sustained, would not "nullify" the judgment avoiding the 2010 quitclaim deed. It would only determine the extent of the debtor's interest in the property before the quitclaim deed was signed. Because the first requirement is not met, the Henshaws' reformation counterclaim is not an impermissible collateral attack. Therefore, the trustee is not entitled to summary judgment on this contention.

The trustee argues that the 2010 quitclaim deed should not affect a hypothetical buyer's notice of the mistake because this court has already decided that the deed represented a fraudulent transfer. He argues that it would be anomalous and unjust to hold that a transferee of a fraudulent transfer gets any benefit from the very document that effected the fraudulent transfer. But the 2010 quitclaim deed was a matter of record when the debtors commenced their bankruptcy case. The subsequent

---

[34] 14 Haw. 651 (1903).

U.S. Bankruptcy Court - Hawaii   #12-90070   Dkt # 113   Filed 06/19/17   Page 12 of 13

avoidance of that deed does not negate the notice it imparted before it was avoided.

## IV. Conclusion

The trustee is entitled to summary judgment in his favor, providing that the Henshaws shall take nothing on the counterclaim. The trustee's counsel shall submit a proposed separate judgment.

## END OF ORDER

U.S. Bankruptcy Court - Hawaii    #12-90070    Dkt # 113    Filed  06/19/17    Page 13 of 13